IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 1:07 CR 96-1 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Antwion Lashae Gillespie, | |
| Defendant. | |

Defendant, Antwion Lashae Gillespie, is charged with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841. Defendant has moved to suppress evidence seized on March 22, 2007. The Court held an evidentiary hearing on this Motion on July 30, 2007. For the following reasons, the Court will deny Defendant's Motion to Suppress (Doc. No. 28).

**FINDINGS OF FACT**

Defendant was a passenger in a 2000 GMC Savana van driven eastbound on Interstate 94 by Sam Juwan Shannon on March 22, 2007 (Exhibit 1). Michigan State Police Troopers Jose Patino and Andrew Foster (collectively "the Troopers") conducted a traffic stop of the van for its failure to signal a lane change and having a broken windshield. Trooper Patino approached the passenger side of the vehicle, while Trooper Foster stood at the rear of the vehicle. Trooper Patino asked Shannon for his driver license and vehicle registration, and also asked Defendant for identification. Defendant responded that he did not have any identification. Trooper Patino then asked Shannon to exit the vehicle and make contact with Trooper Foster at the rear of the vehicle, and Shannon complied.

Trooper Patino then questioned Defendant. Defendant identified himself and stated that he and Shannon attended a Mott University basketball game in Illinois the previous night and were

returning to Flint. Defendant was unaware of Mott University's opponent in the basketball game and claimed that he had not attended the game, but rather visited with relatives while Shannon went to the game. Defendant advised Trooper Patino that they did not bring any luggage.

Trooper Foster asked similar questions to Shannon who claimed he had attended the Mott University basketball game and was returning to Flint. Trooper Foster asked Shannon if he had any weapons on his person, to which Shannon responded that he did not. Trooper Foster then asked Shannon if he could search his person, to which Shannon consented. Trooper Foster discovered a gun magazine clip in Shannon's pocket. Shannon informed Trooper Foster that he had a CCW permit and produced the permit. Trooper Foster then asked Shannon why he did not declare to the officers that he had a weapon pursuant to a CCW permit, which is a civil infraction. Shannon stated that he was told not to inform officers because it would make them nervous. Trooper Foster asked Shannon where the gun was located, and Shannon disclosed its location in his jacket between the seats of the van. The gun was retrieved from that location.

The Troopers conducted a LEIN check of Shannon's driver license which indicated it had been suspended indefinitely in 2006 (Exhibit 7). Defendant's name was also run through the LEIN which revealed a state wide warrant for Defendant's arrest (Gillespie Interview, Patrol Report p. 3). Defendant was then arrested based on this warrant, and Shannon was handcuffed and informed that he was being arrested for driving with a suspended license. The Troopers then began to search the van. Inside the van were pieces of furniture and media equipment, which the Troopers removed (Exhibit 2).

The Troopers saw fingerprints on the cargo door of the van, and believed these to be fresh fingerprints because it had rained earlier in the day and there were no other noticeable fingerprints

2

on the van (Exhibits 3-4). However, Trooper Patino was unable to open the door from the outside. Trooper Patino asked Shannon which key opened the door, but the identified key would not open the door. Shannon stated he had not opened that door, but Trooper Patino responded that the fingerprints indicated someone had recently closed the door. Trooper Foster, who was inside the van, discovered the door lock had been disabled from inside the van. The Troopers noticed the panel on the side door appeared to have been removed and replaced. The Troopers removed the door panel and discovered two packages of suspected cocaine (Exhibits 5-6). Defendant seeks to have these drugs suppressed. Shannon and Defendant were informed they were being charged with possession of cocaine and, along with the impounded van, were taken to the Bridgman state police post.

## CONCLUSIONS OF LAW

It is well established that "[a] police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct." *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002) (citing *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995)). The officer must have probable cause to believe that the motorist has violated the traffic laws.[1] *See United States v. Garrido*, 467 F.3d 971, 977-78 (6th Cir. 2006). To establish probable cause, the Government must show "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385,

---

[1] The standard for traffic stops in the Sixth Circuit is not entirely settled. The Sixth Circuit has held that a police officer may stop a vehicle based upon a reasonable suspicion of a criminal violation. *See United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007). On the other hand, whether a traffic stop for a violation that is only a civil infraction must be supported by probable cause, or whether the less demanding reasonable suspicion standard applies in that situation, remains an open question. *See id.* at 304-95 (citing *Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)). The Government has posed the issue as whether probable cause existed, and therefore the Court finds it unnecessary to resolve which standard applies. But, in any event, the Court would reach the same conclusion even under the less demanding reasonable suspicion standard.

391 (6th Cir. 1993). In determining the existence of probable cause, the officer's subjective motivation is irrelevant. *See Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774 (1996). The Government bears the burden of proving the existence of probable cause. *See United States v. Beal*, 810 F.2d 574, 577 (6th Cir. 1987).

At the hearing, the Court ruled the Government had shown the existence of probable cause based on Shannon's failure to signal a lane change, a violation of M.C.L. § 257.648, and the van's cracked windshield, an equipment violation under M.C.L. § 257.683. The Court also found there was no evidence that the statements made by Defendant to police were coerced or involuntary. The question remaining before the Court was whether the search of the van, particularly the scope of the search, was valid under the circumstances. The Court directed the parties to file supplemental briefs on whether the search was premised on: (1) Defendant Gillespie's arrest; (2) Defendant Shannon's arrest; or (3) their collective arrests.

**Scope of a Search Incident to an Arrest**

A search incident to an arrest of an occupant of a vehicle, whether the occupant is the driver or a passenger, is controlled by *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860 (1981). *Belton* held that when a police officer makes "a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," including "any containers found within the passenger compartment." *Id*. at 460, 101 S. Ct. at 2864. In this case, Shannon was arrested for driving with a suspended license, and Defendant was arrested on an outstanding warrant. Therefore, the Troopers had two independent arrests of vehicle occupants which, under *Belton*, permitted a search of the vehicle incident to the arrests.

However, such a search only extends to "the interior of the passenger compartment of an automobile" and containers which are "capable of holding another object." *Id*. at 460 n.4, 101 S. Ct. at 2864 n.4.  Courts have interpreted this to include areas within an occupant's reach, but not areas "that could be reached only through an elaborate dismantling of the vehicle." *United States v. Barnes*, 374 F.3d 601, 604 (8th Cir. 2004) (noting that "distinguished commentators" have deemed *Belton* insufficient authority to dismantle a vehicle to get inside door panels, citing Wayne R. LaFave, et al., Criminal Procedure § 3.7(a), at 203 (2d ed.1999)); *see United States v. Patterson*, 65 F.3d 68, 71 (7th Cir. 1995) (finding that the automobile exception "does not extend to dismantling portions of the vehicle, including the tailgate's interior cover").  In *Patterson*, drugs were found concealed behind a door panel that was inaccessible without removing the panel.  Here, although the Troopers were permitted under *Belton* to search the passenger compartment of the vehicle without a warrant incident to the arrests, the Troopers must have had probable cause to believe the van contained contraband in order to expand their search to include removal of the cargo door panel.  *See Patterson*, 65 F.3d at 71.

**Troopers had Probable Cause to Search the Door Panel**

An officer may search a vehicle without a warrant if the officer has probable cause to believe that the vehicle contains evidence of a crime. *See California v. Carney*, 471 U.S. 386, 390-94, 105 S.Ct. 2066, 2068-71 (1985); *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir.1994).  Probable cause exists when there is a "'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Wright*, 16 F.3d at 1437 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983)).  Probable cause is to be determined based on the totality of the circumstances and objective facts known to the officers at the time of the search.  *Smith v. Thornburg*, 136 F.3d 1070, 1074-75 (6th Cir. 1998) (citing *Wright*, 16 F.3d at 1437; *United States v. Ferguson*, 8 F.3d 385, 391-

5

92 (6th Cir. 1993)). If supported by probable cause, then every area of the vehicle which may conceal the object of the search may be searched. *United States v. Ross*, 456 U.S. 798, 820-21, 102 S. Ct. 2157, 2170-71 (1982).

Based on the "totality of the circumstances," the Troopers in this case had probable cause to search the cargo door panel. While lawfully searching the vehicle incident to the arrests, the Troopers noticed that the door panel appeared to have been removed and replaced. The Troopers encountered difficulty attempting to open the van's rear cargo door. Upon questioning, Shannon identified the key that opened the door, but Troopers still were unable to open the door with the key. Shannon further stated he had not used the door, although the Troopers observed fresh fingerprints on the door. Trooper Foster discovered the door lock had been disabled from the inside. These factors, when combined with the conflicting statements made by the occupants about the basketball game in Illinois the night before, the lack of luggage for an overnight trip, Defendant's "extremely nervous" behavior, and Defendant's previous criminal drug history indicated by the LEIN check, gave the Troopers probable cause to expand their search to include the area behind the suspicious cargo door paneling. *See United States v. Ledesma*, 447 F.3d 1307, 1317-18 (10th Cir. 2006) (where officers were conducting limited search of the vehicle based on consent, probable cause to search entire van arose because the van's ill fitting side panels appeared to have been removed and reattached repeatedly, the occupant had inadequate luggage for her claimed one to two week trip, and the occupant was extremely nervous); *Patterson*, 65 F.3d at 71 (where officers were conducting a search incident to an arrest, probable cause extended to search the tailgate panel based on the heavy odor of air freshener, a cellular phone, the occupant's nervous behavior, fast food wrappers strewn around the car,

6

inconsistent stories of the occupants regarding travel arrangements, screws missing from tailgate, and also a dog alert to the odor of drugs).

Because the Court holds that probable cause existed for the search of the cargo door panel, the Court need not reach the Government's alternative theory under the inevitable discovery doctrine that the drugs would have been discovered pursuant to an inventory search of the vehicle after its impoundment.

Therefore, Defendant's Motion to Suppress Evidence (Doc. No. 28) is denied.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

August 30, 2008